## CHARLES H. WAKELEE, Respondent, v. GEORGE GOODRUM, Appellant.

### No. 1267; October 12, 1868.

SAWYER, C. J.—The record in this case has been amended by stipulation, since the original opinion was filed, showing the facts to be, in some respects, different from the facts as they appeared in the original record, and as stated in the opinion of the court. Although there were some remarks based upon the erroneous statement, the amendment, in no respect, affects the point, upon which the case was decided. It is proper, however, that the opinion should be so modified as to correspond with the record as corrected. When the petition for rehearing was denied at the close of the last term, we had no time to make the necessary modification, and for this reason we file the modified opinion now. The action is to recover possession of a lot situated on the corner of Twelfth (formerly Brown) and Howard streets, San Francisco. On the 7th of August, 1854, one William Sheer executed a deed purporting to convey to Biggs, Kibbe and Overton a lot one hundred sixty-one feet three inches wide, on the westerly end, and one hundred twenty-eight feet nine inches at the other on Howard street, and four hundred feet long on Twelfth street. Said lot embraced the premises in controversy.

Sheer had no title except possession. On the 16th of January, 1855, said Biggs, Kibbe and Overton mortgaged the whole tract to defendant, Goodrum, to secure payment of the sum of four thousand dollars and interest at the rate of three per cent per month, mortgage duly recorded on the same day. On the first day of April, 1855, Biggs, Kibbe and Overton executed and delivered to Edward H. Whiting a deed, purporting to convey to him the easterly portion of said tract fronting one hundred twenty-eight feet nine inches on Howard street by two hundred sixty-eight feet on Brown, or Twelfth street, and one hundred forty-five feet in width at the westerly end, which deed was recorded May 4, 1855.

On the 25th of July, 1855, Goodrum commenced a suit to foreclose his said mortgage, filing a notice of lis pendens,

making the mortgagors parties, but said Whiting was not made a party. The mortgage was regularly foreclosed as to everybody except Whiting; the property sold under the judgment and purchased by Goodrum, who received the sheriff's deed, purporting to convey the land, including the premises in question, on the twentieth day of May, 1856. Goodrum soon after entered into possession under said sheriff's deed, and he has ever since been in the adverse possession, claiming under said conveyance. The land is within the limits of the so-called Van Ness ordinance, and five years have not elapsed since the final confirmation of the city's claim to title under the Mexican government.

Whiting conveyed, on the first day of May, 1862, to Dibble and Byrne, who in August following conveyed to plaintiff. Plaintiff claims through Whiting, on the ground that his interest was not cut off by the foreclosure suit. The defendant sets up the statute of limitations, which is clearly a good defense, unless plaintiff can connect himself with the title of the city through the Van Ness ordinance. This he attempted to do. The court nonsuited him, but on a motion for new trial the nonsuit was set aside, and a new trial granted. Defendant appeals from the order setting aside the nonsuit, and the question is, Did the plaintiff make out a prima facie case? The city of San Francisco, by the ordinance referred to, granted all its right and claim to the lands within the corporate limits, "to the parties in the actual possession thereof, by themselves or tenants, on or before the first day of January, 1855, and to their heirs and assigns forever. . . . . Provided, such possession has been continued up to the time of the introduction of this ordinance in the common council," etc.: Laws 1858, p. 52. By the terms of the ordinance it is as essential that the "actual possession" should be continued till the introduction of the ordinance, as that it should have existed on or before the first day of January.

On that portion of the lot above described as conveyed to Biggs, Kibbe and Overton, constituting the westerly end of said tract fronting 132 feet on Brown, or Twelfth street, Biggs and Kibbe entered soon after the conveyance to them, and each built a house; and soon after they built a substantial fence around them—the fence on the side toward How-

ard street being two hundred and eighty feet from Howard street, separating the premises in question from the said other tract on which said houses were built. Biggs and Kibbe occupied the houses until Goodrum took possession, in March, 1856. This undoubtedly shows an actual possession in Biggs, Kibbe and Overton to the tract on which their houses were built.

But they did a little grading and hauled some timber on the premises in question, with the intention of building a house for Overton, which intention was never carried out. There was, when they took the conveyance from Sheer, one of those fences usually called "skeleton fences," made of scantling posts four by four inches, with two strips of board, one by four inches, nailed on for rails, around the half block, including both tracts, and another adjoining on the west. After Biggs and Kibbe built their new fence between their houses and the premises in question, and after the lumber was hauled on the said premises for Overton's house, this skeleton fence remained on Twelfth and Howard streets, "partly up and partly down" on Twelfth street, down almost sixty feet on the street in front of the lumber, and in this condition, in connection with the new Biggs and Kibbe fence, and the fence in the rear, built to inclose Wilson's lot, surrounded the said premises. Thus the lot stood at the time of the conveyance to Whiting, on the first day of April, 1855.

It may be conceded, for the purpose of this decision, that the entry on the other part of the tract, claiming the whole, and the commencing to grade and hauling lumber on the lot in question to build a house for Overton, in connection with the skeleton fence, was sufficient to make out a prima facie case of "actual possession" in Biggs, Kibbe and Overton to the whole, within the meaning of the Van Ness ordinance, But "such possession must be continued" by Whiting for the full period limited by the proviso, to be available to pass title to him. What evidence is there of "actual possession" in Whiting? None but the following: The fence, as before mentioned; the skeleton fence on the streets, continuing in the condition last described, "partly up and partly down." The lumber deposited on the lot by the former claimants remained for a while, and Sheer says: "Whiting, their grantee, had the charge and sale of it. Don't know how long Whiting re-

tained charge. The lumber remained there two or three
months after Overton got back, sometime in 1855. The
lumber was there when Whiting proposed to sell it." Over-
ton returned in October, 1854. This is all the evidence
of any kind whatever tending in the slightest degree to show
an actual possession in Whiting.

It does not appear that Whiting himself, or any tenant, or
anybody in his employment, or by his authority, ever set foot
upon the premises, or ever exercised any act of ownership
over it, or ever set up any claim to it. It does not appear
that he owned or claimed to own the lumber left upon the
land by Biggs, Kibbe and Overton. The title to the lumber
did not pass by the conveyance of the land. Whiting "had
the charge and sale of it," of the lumber, but whether on his
own account or for somebody else does not appear. It was
not put there by him, and was there while under his charge
only till sold, because it had been left by those who owned it.
He does not appear to have claimed any title to it. His
action in respect to the lumber, so far as disclosed by the
record, was no act of ownership or indicating ownership of
the land. The fact of its being there under the circumstance
is of no significance on the question of dominion over the
land. Had the lumber lain in the street, or on any other
vacant lot, his action in regard to it, if he had charge of it,
would have been precisely the same. Unless the skeleton
fence, partly up and partly down, on the street, without the
party ever having set foot upon the lot or performed any
act of dominion or control, or setting up any claim otherwise
than is indicated by taking a deed and putting it on record,
and having charge of some lumber, which other parties had
left upon the lot, till its sale and removal, constitutes an
"actual possession" of the land, there is no evidence of any
sort whatever tending to show that Whiting ever was in actual
possession of the premises in question. The acts shown cer-
tainly do not bring the case within the definition of actual
possession adopted in Wolf v. Baldwin, 19 Cal. 318, and
which has since in numerous instances been given in instruc-
tion to jurors, which have been approved on appeal. Mr.
Chief Justice Field in that case says: "By actual possession,
as the terms are here used, is meant that possession which is
accompanied with the real and effectual enjoyment of the

property. It is the possession which follows the subjection of the property to the will and dominion of the claimant to the exclusion of others; and that this possession must be evidenced by occupation or cultivation, or other appropriation, according to the locality and character of the particular premises. An inclosure by an ordinary fence, of the premises, without residence thereon, or improvements or cultivation, or other acts of ownership, is of itself insufficient." And Mr. Justice Baldwin's opinion, although expressed in different phraseology, is to the same effect. This has been the approved construction of the "actual possession" required by the act for the last six years. There is nothing to indicate that Biggs, Kibbe and Overton were in possession or exercised any domain or control over the premises subsequent to their conveyance, or that Whiting ever took actual possession or exercised dominion over the land. The actual possession of Biggs, Kibbe and Overton, before their conveyance, therefore, does not appear to have been continued till the introduction of the ordinance into the common council, or to have been interrupted by an intruder from whom possession might have been recovered.

Goodrum went into possession in March, 1856, under his conveyance in pursuance of the sale in his foreclosure suit, and at the commencement of this suit he had been in the adverse possession for a period of more than six years. Six years had elapsed after Goodrum's entry before Whiting conveyed to plaintiff's grantors. That is to say, unless Whiting acquired title under the Van Ness ordinance, the bar of the statute of limitations had attached in favor of Goodrum, more than a year before Whiting conveyed. When parties rely for a recovery upon technical defects in the transfer of title to deprive others, who have purchased the lands in good faith and long improved and enjoyed them under the belief that they owned them, they cannot complain if they are required to make by proofs a clear prima facie right to recover.

In this instance, we think the plaintiff failed to show a prima facie case, and the district court was correct in granting the nonsuit. The nonsuit was set aside on the ground alone that it was improperly granted. In this we think the court erred.

Order setting aside the nonsuit and granting a new trial reversed.

The foregoing is substituted for the original opinion filed in the case.

We concur: Rhodes, J.; Sprague, J.; Crockett, J.; Sanderson, J.